

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

**FILED**

**October 21, 2015**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 1:32 P.M.

| | | |
|---|---|---|
| John Miller | ) | Docket No. 2015-05-0158 |
| | ) | |
| v. | ) | |
| | ) | State File No. 69295-2014 |
| Lowe's Home Centers, Inc. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Dale Tipps, Judge | ) | |

---

### Affirmed and Remanded – October 21, 2015

---

In this interlocutory appeal, the employee was involved in a work-related accident when he fell onto his left side after stepping backward onto a pallet jack. The employer accepted the accident as compensable and authorized certain medical treatment, but denied that the employee suffered a compensable left hip injury. The treating physician diagnosed left hip osteoarthritis and recommended hip replacement surgery. The trial court concluded that the employee was entitled to medical benefits for the left hip, including hip replacement surgery, based on a finding that the employee's pre-existing degenerative condition had been aggravated by the work injury and that such aggravation was primarily caused by the compensable accident. The employer appealed. Having carefully reviewed the record, we affirm the determination of the trial court and remand the case for further proceedings as may be necessary.

Judge Timothy W. Conner delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

Nancy R. Steer, Nashville, Tennessee, for the employer-appellant, Lowe's Home Centers, Inc.

Jill T. Draughon, Nashville, Tennessee, for the employee-appellee, John Miller

**Factual and Procedural Background**

John Miller ("Employee"), a sixty-two-year-old resident of Marshall County, Tennessee, was employed by Lowe's Home Centers, Inc. ("Employer"), as a delivery person. His job required him to move and lift appliances, load and unload trucks, and install appliances in customers' homes. On August 31, 2014, he was moving an appliance to a staging area inside the store in preparation for the next day's deliveries when, unbeknownst to Employee, a co-worker placed a pallet jack directly behind him. As Employee manipulated a dolly underneath the appliance and stepped backward to tilt the appliance onto the dolly, he backed onto the pallet jack and fell to his left. He struck his head and left side and was rendered unconscious for several minutes. He was transported by ambulance to an emergency room for treatment.

Employee alleged injuries to his left leg, left shoulder and arm, left hip, low back, and neck. He received authorized medical treatment from Dr. Joseph F. Wade, who noted complaints of low back pain, left shoulder pain, and left hip pain. Employee was referred to Dr. Jeffrey Adams for treatment of his left shoulder complaints.

A CT of the lumbar spine completed on the date of the accident revealed multi-level degenerative disc disease with chronic, calcified disc herniations at L1-L4. Dr. Wade also noted evidence of left lumbar radiculopathy. On December 2, 2014, Dr. Wade reviewed x-rays of Employee's left hip and opined that Employee had a "severely arthritic left hip" and needed hip replacement surgery. Dr. Wade further noted that Employee had previously undergone hip replacement surgery on the right side.

In his April 14, 2015 report, Dr. Wade stated that Employee's "osteoarthritic left hip" had been "exacerbated by his work injury." He reiterated his opinion that Employee needed hip replacement surgery.

Employer took the position that Employee's left hip osteoarthritis was a pre-existing, degenerative condition, and that there was no evidence of a compensable aggravation caused primarily by the work accident. Both parties submitted written questionnaires to Dr. Wade. In response to a questionnaire from Employee's attorney dated February 19, 2015, Dr. Wade stated that the work injury "caused the condition to become symptomatic." Moreover, although Dr. Wade agreed that the surgery was necessitated by "pain and problems" Employee experienced following the work injury, he also commented that "[Employee] would have needed the surgery eventually without the injury." Finally, Dr. Wade agreed that the reason for the surgery is the degree of Employee's pain following the work accident.

In his May 19, 2015 response to the questionnaire from Employer's counsel, Dr. Wade agreed that the work accident "temporarily exacerbate[d]" Employee's pre-existing, degenerative left hip condition. He further agreed that the work accident did not

cause a permanent aggravation of the left hip condition and did not result in "any permanent anatomical change" to that condition.

During his deposition on August 25, 2015, Dr. Wade reiterated the opinions expressed in the questionnaire from Employee's counsel and further testified that it can be difficult to determine why a previously asymptomatic condition becomes symptomatic. He explained that it "could be" that an injury to the low back during the fall put "increased force" on the left hip, thereby indirectly causing the condition to become symptomatic. He also testified that the work injury could have "caused a twisting motion to the hip," thereby directly worsening the hip condition. He explained that "[p]ain is the primary indication for the surgery." Significantly, Dr. Wade opined that "certainly, the timing of the surgery may have been hastened because of the injury for sure, yes."

On cross-examination, Dr. Wade confirmed his responses to Employer's questionnaire and reiterated that, in his opinion, the fall at work did not cause a permanent anatomical change to Employee's pre-existing left hip condition. However, on re-direct examination, Dr. Wade agreed that, given the length of time the left hip symptoms have persisted since the work accident, he would describe the condition as a "chronic exacerbation."

Employee filed a Petition for Benefit Determination seeking temporary disability and medical benefits. Following unsuccessful mediation efforts, a Dispute Certification Notice was issued, identifying multiple issues for adjudication. Employee filed a Request for Expedited Hearing and asked for an in-person evidentiary hearing. During the hearing, conducted on September 8, 2015, the parties agreed that the claim for temporary disability benefits was not ripe for adjudication, and that the only issues to be addressed at the hearing were the compensability of the left hip condition and the request for authorized medical treatment for that condition.

Following the hearing, the trial court issued an Expedited Hearing Order Granting Medical Benefits. The trial court concluded that Employee "appears likely to establish that he is entitled to medical treatment" and that he "is eligible for medical benefits without a showing that this injury resulted in permanent anatomic change." Employer timely appealed.

**Standard of Review**

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless the rights of a party

3

"have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

    (A)    Violate constitutional or statutory provisions;

    (B)    Exceed the statutory authority of the workers' compensation judge;

    (C)    Do not comply with lawful procedure;

    (D)    Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;

    (E)    Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

**Analysis**

*Reliance on Pre-Reform Case Law*

Determining the compensability of an alleged work-related aggravation of a pre-existing, degenerative medical condition has long been a source of difficulty under Tennessee's Workers' Compensation Law. The general assembly has, in recent years, sought to clarify this issue through statutory amendments. In 2011, the definition of "injury" was amended to provide that work-related injuries "[d]o *not* include . . . [c]umulative trauma conditions . . . unless such conditions arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(12)(C) (2013) (emphasis added).

Two years later, as part of the 2013 Workers' Compensation Reform Act, the general assembly again amended the definition of "injury":

"Injury" and "personal injury" mean an injury by accident, . . . or cumulative trauma conditions . . . arising primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment of the employee; provided that:

    (A) An injury . . . shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment.

4

Tenn. Code Ann. § 50-6-102(13) (2015). Moreover, for injuries occurring on or after July 1, 2014, the general assembly made clear that "this chapter shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction and this chapter shall not be construed in a manner favoring either the employee or the employer." Tenn. Code Ann. § 50-6-116 (2015).

It is in the context of these most recent statutory amendments that relevant case law must be considered. As we have indicated before, "reliance on precedent from the Tennessee Supreme Court is appropriate unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). In this case, the trial court relied upon case law decided under pre-reform law, namely *Trosper v. Armstrong Wood Products, Inc.*, 273 S.W.3d 598 (Tenn. 2008), in arriving at its decision. We conclude this was error.

In *Trosper*, the Tennessee Supreme Court sought to clarify the circumstances in which the aggravation of a pre-existing, degenerative condition may be compensable under Tennessee's Workers' Compensation Law. However, the majority opinion in *Trosper* cited several tenets of the law which were directly impacted by the 2013 reforms. For example, with respect to evidence of medical causation, the Court noted that "reasonable doubt must be resolved in favor of the employee." *Id.* at 604. Given that the law no longer allows a liberal or remedial interpretation of the statute in favor of an employee, this statement of pre-reform law no longer applies.

In addition, the Supreme Court in *Trosper* explained that "unlike in some other jurisdictions, there is no requirement that the injury be traceable to a definite moment in time or triggering event in order to be compensable." *Id.* However, for dates of injury on or after July 1, 2014, the law now provides that an injury by accident must result from "a specific incident, or set of incidents . . . identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A).

Third, the Supreme Court in *Trosper* relied on the proposition that an employee may prevail on the issue of medical causation if a medical expert testifies that a work accident "could be" the cause of a medical condition, when there is corroborative lay testimony from which medical causation can be inferred. *Id.* at 608, 609. However, the statute now requires proof, by a "reasonable degree of medical certainty," that the work accident "contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C). Furthermore, "'shown to a reasonable degree of medical certainty' means

that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(13)(D).

Finally, the Supreme Court in *Trosper* concluded that "[a]lthough the evidence of causation is particularly close, the lay testimony in conjunction with the medical evidence is sufficient to establish that the Employee's work activities did not merely increase the pain in his hands, but advanced the severity of his pre-existing arthritic condition. To the extent that reasonable doubt may exist on this point, our law requires an interpretation favorabl[e] to the Employee. That view is consistent, of course, with the remedial nature of the Workers' Compensation Act." *Id.* at 609 (citation omitted).

Thus, the Supreme Court in *Trosper* relied on key tenets of the law which were directly impacted, indeed superseded, by subsequent legislative action. Given the recent amendments to the statute as discussed above, we conclude that the trial court's reliance on *Trosper* in reaching its decision was error. We also conclude, however, that the error was harmless given this record. *See, e.g., Hensley v. CSX Transp., Inc.*, 310 S.W.3d 824, 830 (Tenn. 2009) ("Our harmless error rule . . . looks at whether or not the error 'more probably than not affected the judgment.'").

*Aggravation of a Pre-existing Degenerative Condition*

The pertinent statute, Tennessee Code Annotated section 50-6-102(13), makes clear that an aggravation of a pre-existing condition is a compensable injury when "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13)(A). Thus, an employee can satisfy the burden of proving a compensable aggravation if: (1) there is expert medical proof that the work accident "contributed more than fifty percent (50%)" in causing the aggravation, and (2) the work accident was the cause of the aggravation "more likely than not considering all causes." Tenn. Code Ann. § 50-6-102(13)(C)-(D). However, an employee need not prove each and every element of his or her claim by a preponderance of the evidence at an expedited hearing to obtain temporary disability or medical benefits, but must come forward with sufficient evidence from which the court can conclude that he or she is likely to prevail at a hearing on the merits, consistent with Tennessee Code Annotated section 50-6-239(d)(1). *McCord*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9.

In the present case, it is undisputed that Employee had no prior difficulties with his left hip and no limitations in work activities due to his left hip before the August 31, 2014 work accident. It is undisputed that he suffered a work-related injury when he fell onto his left side, and it is also undisputed that he complained of radiating pain into his left hip following the fall. Most significantly, Dr. Wade testified that the work accident caused a "chronic exacerbation" of his pre-existing hip condition. He further stated that the need for hip replacement surgery was "hastened" by the work accident. He

6

concluded that Employee's pain following the work accident was the "primary indication for the surgery."

Employer argues that the words "aggravation" and "exacerbation" have specific meanings as set forth in the Sixth Edition of the American Medical Association's <u>Guides to the Evaluation of Permanent Impairment</u> ("AMA Guides"), which states:

> Although there are circumstances in which an event was the sole or primary cause of a given effect, in many instances patients have preexisting pathology that may have contributed to their clinical condition. *Aggravation* is a circumstance or event that permanently worsens a preexisting or underlying condition. The terms *exacerbation, recurrence, or flare-up* generally imply worsening of a condition temporarily, which subsequently returns to baseline. Exacerbation does not equal aggravation.

Am. Med. Ass'n, <u>Guides to the Evaluation of Permanent Impairment</u> 25 (6th ed. 2008) (emphasis in original). In its position statement on appeal, Employer argues that "the case law appears to indicate that entitlement to medical benefits requires an aggravation – *as defined by the AMA Guides* – of a preexisting condition." (Emphasis added.) Thus, Employer contends that because Dr. Wade used the term "exacerbation," in contrast to the statute's use of the term "aggravation," Employee cannot prove a compensable "aggravation" of his pre-existing, degenerative condition.

However, there is nothing in the statute indicating that the general assembly relied on the definitions of the terms "aggravation" and "exacerbation" as discussed above.[1] Moreover, it is evident from Dr. Wade's testimony that he did not use those terms as defined in the AMA Guides. Instead, Dr. Wade testified that, given the length of time Employee's symptoms have persisted, he would describe Employee's condition as a "chronic exacerbation." Such testimony implies more than a temporary "flare-up" of a pre-existing condition. In addition, there is no evidence in this record to suggest that Employee's left hip condition has "returned to baseline."

Employer next argues that an "aggravation" of a pre-existing condition is not compensable unless there is a permanent anatomical change or actual advancement caused by the work injury. In support of this position, Employer cites *Milligan v. Ten-State, Inc.*, No. 02S01-9612-CV-00110, 1998 Tenn. LEXIS 69, at *5 (Tenn. Workers' Comp. Panel Feb. 20 1998). However, the Supreme Court's Special Workers' Compensation Appeals Panel in *Milligan* was addressing whether an employee was eligible for permanent disability benefits, not whether the employee was entitled to

---

[1] Tennessee Code Annotated section 50-6-204(k) requires a treating physician to utilize "the applicable edition of the AMA [G]uides" in assigning an impairment rating. Nothing in the statute, however, mandates the use of the AMA Guides for any other purpose.

7

medical benefits following a work-related accident. In fact, the court in *Milligan* acknowledged that the work accident itself was compensable and that the employee had already received significant medical treatment causally-related to the work accident. *Id.* at *4.

After filing its notice of appeal, Employer filed a position statement with a three-page exhibit that includes a September 29, 2015 letter from Employer's attorney to Dr. Wade and the doctor's handwritten responses dated October 2, 2015. The letter asked Dr. Wade to apportion the cause of the need for hip replacement surgery between the pre-existing osteoarthritis and the work accident. Employer presents as one of two issues on appeal "whether Employer should be responsible for the recommended medical treatment when employee's authorized treating physician opined that employee's pre-existing condition contributed seventy-five percent (75%) to cause the need for the recommended surgery." This latest questionnaire and Dr. Wade's responses were not among the questionnaires previously answered by Dr. Wade and were not discussed during Dr. Wade's deposition for proof. More importantly, the information was not admitted into evidence during the expedited hearing for consideration by the trial judge. "[W]e will not consider on appeal testimony, exhibits, or other materials that were not properly admitted into evidence at the hearing before the trial judge." *Hadzic v. Averitt Express*, No. 2014-02-0064, 2015 TN Wrk. Comp. App. Bd. LEXIS 14, at *13 n.4 (Tenn. Workers' Comp. App. Bd. May 18, 2015); *see also Brown v. Cont'l Baking Co.*, No. W1999-02700-SC-WCM-CV, 2000 Tenn. LEXIS 386, at *10 (Tenn. Workers' Comp. Panel July 7, 2000) ("[W]e will not consider supplemented portions of the record that were not considered by the trial court."). Consequently, Dr. Wade's responses to this most recent questionnaire cannot be considered in this interlocutory appeal.

In sum, to qualify for medical benefits at an interlocutory hearing, an injured worker who alleges an aggravation of a pre-existing condition must offer evidence that the aggravation arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(13)(A) (2015). Moreover, the employee must come forward with sufficient evidence from which the trial court can determine that the employee would likely establish, to a reasonable degree of medical certainty, that the work accident contributed more than fifty percent in causing the aggravation, considering all causes. *See* Tenn. Code Ann. § 50-6-102(13)(B)-(C). Finally, an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation.

In his deposition, Dr. Wade attributed the need for surgery to the work accident. He testified that although Employee likely would have needed hip replacement at some undetermined time in the future, the work accident hastened the need for the surgery. He also opined that Employee suffered a "chronic exacerbation" of his pre-existing condition as a result of the work accident. Employer did not offer any countervailing expert opinions at the expedited hearing. In light of this testimony, we find that the evidence

presented to date does not preponderate against the trial judge's determination that Employee is likely to prevail at a hearing on the merits, and that Employee is entitled to authorized, reasonable and necessary medical treatment as recommended by Dr. Wade.

## Conclusion

We conclude that the trial court did not err in ordering medical benefits based on the evidence presented at the expedited hearing. We further find that the trial court's order does not violate any of the standards identified in Tennessee Code Annotated section 50-6-217(a)(3) (2015). The trial court's decision is affirmed and the case is remanded for such additional proceedings as may be necessary.

Timothy W. Conner, Judge
Workers' Compensation Appeals Board



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

**FILED**

**October 21, 2015**

**TENNESSEE WORKERS' COMPENSATION APPEALS BOARD**

**Time: 1:32 P.M.**

| John Miller | ) | Docket No. 2015-05-0158 |
| | ) | |
| v. | ) | |
| | ) | State File No. 69295-2014 |
| Lowe's Home Centers, Inc. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 21st day of October, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Jill Draughon | | | | | X | jdraughon@hughesandcoleman.com |
| Nancy Steer | | | | | X | nancy.steer@leitnerfirm.com |
| Dale Tipps, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov